IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **GERALD L. EUBANKS** and **DETERMINATION III 130 WESTPORT, LLC**, <br><br> Plaintiffs, <br><br> v. <br><br> **HOWARD LUTNICK**, in his official capacity as Secretary of the United States Department of Commerce; and **NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION**, <br><br> Defendants. | No. 8:25-cv-614 |

# COMPLAINT

## INTRODUCTION

1. Plaintiffs are the captain and owner of M/V Determination III, a vessel that the captain piloted from Florida to South Carolina in December 2022. The transit was uneventful, and the crew—who were specifically trained to identify North Atlantic right whales and actively looked out for them during transit—encountered no right whales. Nevertheless, the National Oceanic and Atmospheric Administration ("NOAA") levied a civil penalty of $14,250 against Plaintiffs for traveling at approximately 18 knots for around 200 nautical miles.

2. The transit violated a 2008 NOAA regulation that limits speeds to 10 knots for vessels over 65 feet traveling at certain times and places on the East Coast.

3. This Speed Rule was promulgated under the Marine Mammal Protection Act ("MMPA") and Endangered Species Act ("ESA") to prevent the "take"—that is, the killing, injuring, capturing, or harassment—of the North Atlantic right whale, an endangered species.

4. The North Atlantic right whale has been killed by a vessel strike only four times in the 10 years between 2009 and 2018, according to NOAA data. It has also been seriously injured by a vessel strike only four times during that time.

5. The Speed Rule imposes significant operational burdens on vessel owners and operators, with total economic impacts estimated at $116 million per year at the time the rule was proposed.

6. NOAA, however, lacked statutory authority to issue the Speed Rule, because (1) it issued the rule under an incorrect and procedurally more lax provision of the MMPA, (2) none of the relevant rulemaking provisions permit the adoption of prophylactic measures like the Speed Rule, and (3) the connection between violating the Speed Rule and the possibility of take is too remote.

7. Moreover, if the Speed Rule is supported by statute, then the relevant statute delegates rulemaking power so broad and unconstrained as to constitute a delegation of lawmaking power in violation of Article I of the Constitution. Indeed, in a now-withdrawn proposal, NOAA has expressly claimed the right to expand the Speed Rule to nearly the entire East Coast, down to vessels as small as 35 feet long, an action that would destroy fishing, shipping, and recreational boating.

8. Plaintiffs were first cited by a NOAA enforcement officer, whereupon they challenged the citation in an administrative hearings process. The Administrative Law Judge ("ALJ"), though noting Plaintiffs' cooperation with the investigation, imposed a $14,250 civil penalty. The NOAA Administrator denied review and designated the ALJ's Initial Decision as the final agency action.

9. Plaintiffs now petition this Court pursuant to the Administrative Procedure Act to set aside the Initial Decision and civil penalty on the ground that the Speed Rule is unlawful.

## THE PARTIES

### *Plaintiffs*

10. At the relevant times, Gerald L. Eubanks was the captain of the M/V Determination III.

11. Determination III 130 Westport, LLC, is a Florida limited liability company that owns M/V Determination III, a vessel longer than 65 feet.

*Defendants*

12. Howard Lutnick is sued in his official capacity as Secretary of Commerce.

13. National Oceanic and Atmospheric Administration is the federal agency that promulgated and enforces the Speed Rule.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 2201 (authorizing declaratory relief); *id.* § 2202 (authorizing injunctive relief); 5 U.S.C. §§ 701–06 (judicial review provisions of the Administrative Procedure Act).

15. Plaintiffs have exhausted all available and required administrative remedies.

16. Venue in the Middle District of Florida is proper because Plaintiff Eubanks resides in this District, and Defendants include United States agencies and officers sued in their official capacities. 28 U.S.C. § 1391(e).

## STATUTORY AND REGULATORY BACKGROUND

17. Congress enacted the MMPA in 1972 to protect marine mammal species that "are, or may be, in danger of extinction or depletion as a result of man's activities." 16 U.S.C. § 1361(1).

18. The MMPA accomplishes its purpose by prohibiting the "taking" of marine mammals, defined as actions that "harass, hunt, capture, or kill" them. §§ 1362(13), 1372.

19. The MMPA vests the Secretary of Commerce ("Secretary") with authority to issue regulations on the taking of marine mammals, contingent on the evaluation of five factors. § 1373.

20. The MMPA also empowers the Secretary with the general power to issue "such regulations as are necessary and appropriate to carry out the purposes of" the statute. § 1382(a).

21. Similarly, Congress enacted the ESA in 1973 to conserve endangered and threatened species. § 1531(a), (b).

22. The ESA prohibits the "taking" of endangered species, defined as actions to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" protected species. §§ 1532(19), 1538(a)(1)(B).

23. The ESA authorizes the Secretary to promulgate regulations "appropriate to enforce" its provisions. *Id.* § 1540(f).

24. The Secretary has delegated his MMPA and ESA rulemaking powers to the NOAA Administrator.

25. In 2008, NOAA, through its sub-agency the National Marine Fisheries Service ("NMFS"), issued a Final Rule To Implement Speed

Restrictions to Reduce the Threat of Ship Collisions With North Atlantic Right Whales ("2008 Speed Rule"). 73 Fed. Reg. 60,173 (Oct. 10, 2008).

26. NOAA issued the Speed Rule under claimed authority from both the MMPA and the ESA. *Id.* at 60,182.

27. The 2008 Speed Rule established seasonal management areas ("SMAs") along the United States Atlantic seaboard. 50 C.F.R. § 224.105(a).

28. The SMAs span sections of the Atlantic seaboard, including areas off the coasts of New England, the Mid-Atlantic, and the Southeast. 50 C.F.R. § 224.105(a); 73 Fed. Reg. at 60,175.

29. The SMAs are active seasonally, with each active for approximately four to five months each year. 50 C.F.R. § 224.105(a).

30. With limited exceptions, vessels that are 65 feet in overall length or greater must travel at 10 knots or less over ground in active SMAs. *Id.*

31. NOAA justified the rule based on data suggesting that vessel strikes contribute to mortality rates among North Atlantic right whales. 73 Fed. Reg. at 60,174.

## FACTUAL BACKGROUND

32. On December 7 and 8, 2022, the M/V Determination III, with Mr. Eubanks as captain, transited through active Seasonal Management Areas along the Atlantic coast.

33. An ocean-going vessel moving at lower speeds often lacks the momentum to resist being buffeted by waves and risks losing control and stability.

34. Given this dynamic and considering the M/V Determination III's design and the oceanic conditions, Mr. Eubanks determined that speeds above 10 knots were necessary to maintain stability and safe operation during the transit and conducted the transit accordingly.

35. To protect the right whale during transit, Mr. Eubanks had trained the crew to recognize the right whale by the unique patterns on their heads, the lack of a dorsal fin, and the distinctive V-pattern spray from their blowholes. He posted an additional lookout to help spot the right whale during transit and primarily transited during daylight.

36. The M/V Determination III completed its transit safely and without encountering any right whales.

37. The vessel's automated tracking system recorded speeds above 10 knots while transiting approximately 216.8 nautical miles within active SMAs.

38. On October 12, 2023, NOAA issued a Notice of Violation against Plaintiffs, assessing a civil penalty of $7,500 for each of two violations of the Speed Rule, totaling $15,000.

39. Plaintiffs contested the penalty through NOAA's administrative process, challenging the agency's statutory authority to impose the Speed Rule.

40. On November 5, 2024, an Administrative Law Judge declined to address Plaintiffs' challenges to the Speed Rule's validity and affirmed the violation.

41. However, the ALJ reduced the civil penalty from NOAA's proposed $15,000 to $14,250 based on Plaintiffs' cooperation during the investigation.

42. On January 12, 2025, the NOAA Administrator denied review of the ALJ's decision and designated the decision NOAA's final agency action.

## COUNT I: The Citation Should Be Set Aside Because the Speed Rule Exceeds NOAA's Statutory Authority

### (5 U.S.C. § 706(2)(C))

43. The preceding paragraphs are incorporated herein by reference.

44. The citation's validity turns on the validity of the Speed Rule.

45. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

46. The Speed Rule is not supported by statute and is therefore invalid.

47. First, NOAA issued the Speed Rule under 16 U.S.C. § 1382(a) of the MMPA, but the Speed Rule is a regulation on take, which may be issued

only under the rulemaking procedure of § 1373, which requires specific analyses that NOAA did not complete.

48. Second, none of the relevant provisions from the MMPA and ESA authorize prophylactic measures like the Speed Rule. Rather, those provisions permit only the regulation of take of a protected animal, not activity that simply could result in take.

49. Third, even if a relevant provision authorized NOAA to regulate activity that could result in take, that provision authorizes NOAA to issue categorical rules like the Speed Rule only if there is a tight connection between the regulated activity and the possibility of take. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 92–93 (2002). Because that tight connection is missing, the relevant statutory provision does not authorize the Speed Rule.

50. Fourth, the major questions doctrine applies, because NOAA's claimed power would allow it to regulate vessels of any size, impose any speed restriction, and designate regulated areas of any size. This is the power to decide whether critical ports, maritime activities, and international trade are permitted to operate, and it is therefore the power to decide a major question.

51. Despite this, no statute provides a clear statement authorizing NOAA to regulate oceanic speed limits, and the Speed Rule is therefore not supported by statute.

Case 8:25-cv-00614-CEH-AAS   Document 1   Filed 03/14/25   Page 10 of 12 PageID 10

52. Because the Speed Rule is unlawful, the ALJ's Initial Decision and the civil penalty must be set aside. 5 U.S.C. § 706(2).

### COUNT II: In the Alternative, the Citation Should Be Set Aside Because the Speed Rule's Statutory Authority Violates Nondelegation Doctrine

**(Article I, Section 1, of the U.S. Constitution; 5 U.S.C. § 706(2)(B), (C))**

53. The preceding paragraphs are incorporated herein by reference.

54. If the Speed Rule is authorized by the MMPA or ESA, the relevant statute is so broad and unconstrained as to delegate lawmaking authority in violation of Article I of the Constitution and therefore cannot support the Speed Rule.

55. Article I, Section 1, of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States . . . ."

56. Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935).

57. The President, acting through his agencies, therefore, may not exercise Congress's legislative power to declare entirely "what circumstances . . . should be forbidden" by law. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 418–19 (1935).

58. If the MMPA or ESA could be read to authorize the Speed Rule, then the relevant statute provides no intelligible principle to guide NOAA's

exercise of prophylactic rulemaking power untethered from actual harm to protected species.

59. Under NOAA's interpretation, the general rulemaking provisions of these statutes would grant the agency unconstrained authority to forbid any activity on land or sea that creates even a theoretical possibility, no matter how remote, of harming a protected species.

60. For example, this unconstrained power would permit NOAA to impose speed limits, of any restrictiveness, on any or all vessels in any waters—power that the agency has already effectively claimed in its abandoned attempt to expand the Speed Rule.

61. Such broad statutory authority would lack meaningful limits and would therefore delegate lawmaking authority to the Secretary and NOAA in violation of Article I of the Constitution.

62. In the absence of a constitutional rulemaking provision, the Speed Rule is unsupported by statute, and the Initial Decision and civil penalty must be set aside.

## REQUEST FOR RELIEF

Plaintiffs request the following relief:

(i) A declaratory judgment holding the ALJ's Initial Decision and civil penalty to be unlawful;

(ii)    A permanent prohibitory injunction setting aside the Initial Decision and civil penalty and forbidding Defendants from enforcing the Initial Decision or civil penalty;

(iii)   An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

(iv)   Any other relief as the Court deems just and proper.

DATED: March 14, 2025.

Respectfully submitted,

/s/ Oliver J. Dunford
OLIVER J. DUNFORD
Fla. Bar No. 1017791
*Local Counsel*
PACIFIC LEGAL FOUNDATION
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: 916.503.9060
ODunford@pacificlegal.org

MICHAEL POON*
Cal. Bar No. 320156
*Lead Counsel*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: 916.419.7111
MPoon@pacificlegal.org

*Attorneys for Plaintiffs*

*\*pro hac vice motion forthcoming*