UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

GERALD L. EUBANKS, et al.,

    *Plaintiffs*,

v.                                                                    No. 8:25-cv-614-CEH-AAS

HOWARD LUTNICK, in his official
Capacity as U.S. Secretary of
Commerce, et al.,

    *Defendants*.

_____/

**REPLY MEMORANDUM IN SUPPORT OF
FEDERAL DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND .......................................................................... 2

ARGUMENT................................................................................................. 2

    I.      The Speed Rule Enforces the ESA. .............................................................. 3

    II.    The Speed Rule Carries Out the MMPA. ...................................................... 8

    III.   Plaintiffs fail to show that the Speed Rule is an invalid categorical
           regulation. .................................................................................................. 11

    IV.   The Speed Rule does not implicate the major questions doctrine................. 13

    V.    Neither the MMPA nor the ESA implicates the nondelegation
           doctrine. ..................................................................................................... 13

CONCLUSION ........................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Colorado River Indian Tribes v. Nat'l Indian Gaming Comm'n,*
466 F.3d 134 (D.C. Cir. 2006) ................................................................. 5

*Ctr. for Biological Diversity v. Nat'l Marine Fisheries Serv.,*
No. 22-5295, 2024 WL 3083338 (D.C. Cir. June 21, 2024) .................................... 6

*FCC v. American Broadcasting Co.,*
347 U.S. 284 (1954) ................................................................................ 5

*FCC v. Consumers' Rsch.,*
606 U.S. 656 (2025) ................................................................................ 14

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ........................................................................... 2, 10

*Louisiana Shrimp Association v. Biden,*
789 F. Supp. 3d 467 (E.D. La. 2025) ....................................................... 6

*Mass. Lobstermen's Ass'n, Inc. v. Menashes,*
127 F.4th 398 (1st Cir. 2025) .......................................................... 11, 12

*Michigan v. EPA,*
576 U.S. 743 (2015) ........................................................................... 3, 9

*Mourning v. Family Pubs. Serv., Inc.,*
411 U.S. 356 (1973) .......................................................................... 3, 12

*Ragsdale v. Wolverine World Wide, Inc.,*
535 U.S. 81 (2002) ........................................................................... 11, 12

*Royal Palm Vill. Res., Inc. v. Slider,*
57 F.4th 960 (11th Cir. 2023) ................................................................. 3

*Tennessee Valley Auth. v. Hill,*
437 U.S. 153 (1978) ................................................................................ 5

*Thorpe v. Housing Auth. of City of Durham,*
393 U.S. 268 (1969) ................................................................................ 3

*United States v. Mitchell,*
  39 F.3d 465 (4th Cir. 1994) ................................................................. 6, 7

*Vista Mktg., LLC v. Burkett,*
  812 F.3d 954 (11th Cir. 2016) ................................................................. 8

*West Virginia v. EPA,*
  597 U.S. 697 (2022) ............................................................................ 13

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ............................................................................ 14

**Statutes**

5 U.S.C. § 553(b)(2) ............................................................................. 10

5 U.S.C. § 706 ...................................................................................... 10

16 U.S.C. § 1361 .................................................................................... 9

16 U.S.C. § 1371(a) ................................................................................ 9

16 U.S.C. § 1372 .................................................................................... 9

16 U.S.C. § 1373 .................................................................................... 9

16 U.S.C. § 1375(a)(1) ........................................................................... 11

16 U.S.C. § 1382(a) ........................................................................... 2, 8, 9

16 U.S.C. § 1382(e) ............................................................................. 8, 11

16 U.S.C. § 1531(b) ............................................................................... 4, 7

16 U.S.C. § 1531(c) .................................................................................. 5

16 U.S.C. § 1531(c)(1) ......................................................................... 4, 5, 7

16 U.S.C. § 1532(3) .................................................................................. 7

16 U.S.C. § 1533(d) ............................................................................... 7, 8

16 U.S.C. § 1538(a)(1)(B)-(C) .................................................................................. 4

16 U.S.C. § 1540(a)(1) ...........................................................................................7, 11

16 U.S.C. § 1540(f) ............................................................................................ 2, 3, 7, 8

## Regulations

50 C.F.R. § 224.105 ................................................................................................ 11

## Other Authorities

73 Fed. Reg. 60173 (Oct. 10, 2008) ..................................................................... 1, 3

86 Fed. Reg. 53818 (Sept. 28, 2021) ....................................................................... 9

Black's Law Dictionary (1968) ............................................................................... 3

## INTRODUCTION

The North Atlantic right whale is in danger of extinction. Human interaction, including vessel strikes, is the leading cause of deaths and serious injuries to the species. To prevent the "take" of right whales and thereby effectuate the purposes of the Endangered Species Act ("ESA") and the Marine Mammal Protection Act ("MMPA"), the National Marine Fisheries Service ("NMFS" or "the Agency") established seasonal management areas ("SMAs") along the U.S. East Coast during times and in places where whales and vessels are likely to co-occur.

This case presents purely legal challenges concerning the Agency's authority to promulgate regulations pursuant to the ESA and the MMPA, respectively. The crux of the issue before the Court is whether Congress conferred rulemaking authority pursuant to the ESA and MMPA for the Agency to promulgate regulations like the Speed Rule, 73 Fed. Reg. 60173 (Oct. 10, 2008)[1], to prevent or reduce the severity of "take" of endangered marine mammals, or (as Plaintiffs assert) whether the Agency's authority is limited to merely prohibiting such take.

The Speed Rule is fully consistent with ESA section 1540(f), which authorizes the Secretary of Commerce ("Secretary") to promulgate regulations "as may be

---

[1] The Agency recently issued an Advance Notice of Proposed Rulemaking ("ANPR") soliciting "information to inform a possible deregulatory-focused modernization of the speed rule and the development of alternative vessel strike-reduction programs." *See* https://www.federalregister.gov/public-inspection/2026-04260/north-atlantic-right-whale-vessel-strike-reduction-rule (last visited March. 3, 2026). The anticipated publication of the ANPR in the Federal Register does not affect Plaintiffs' claims regarding enforcement of the existing Speed Rule, which will remain in effect pending completion of rulemaking (if any) based on comments received in response to the ANPR.

1

appropriate to enforce" the statute. 16 U.S.C. § 1540(f). The Speed Rule is also fully consistent with MMPA section 1382(a), which authorizes the Secretary to promulgate regulations that are "necessary and appropriate" to carry out the purposes of the MMPA. 16 U.S.C. § 1382(a). Therefore, the Agency's interpretations of the ESA and MMPA, respectively, are consistent with the "best reading" of those statutes. *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 381, 395 (2024). The Court should grant summary judgment in favor of Federal Defendants, affirming the final agency decision of the National Oceanic and Atmospheric Administration ("NOAA") Administrator denying Plaintiffs' petition for administrative review of the administrative law judge's ("ALJ's") Initial Decision in *In re Determination III 130 Westport, LLC, and Gerald L. Eubanks*, Docket No. SE2303316, imposing a $14,250 penalty on Plaintiffs for violating the Speed Rule.

## FACTUAL BACKGROUND

The parties stipulated to the facts establishing liability regarding the Notice of Violation and Assessment of Administrative Penalty issued by NOAA to Plaintiffs on October 12, 2023. NOAA_000004–08; ECF No. 49. In short, on December 7 and 8, 2022, the *M/V Determination III*, a 111.4 ft. yacht, traveled over 200 nautical miles through multiple SMAs at average speeds between seventeen and nineteen knots, well in excess of the ten-knot restriction established in the Speed Rule to protect North Atlantic right whales from collisions with ships in these areas. NOAA_001348-49.

## ARGUMENT

2

NMFS promulgated the Speed Rule pursuant to its rulemaking authority under MMPA section 1382(a) and ESA section 1540(f). NOAA_001571; *see* 73 Fed. Reg. at 60182. Although the Court may uphold the Speed Rule based on *either* statute, the best readings of the ESA and MMPA confirm that *both* statutes confer the requisite rulemaking authority.

## I.    The Speed Rule Enforces the ESA.

The ESA authorizes the Secretary to promulgate regulations "as may be appropriate to enforce" the statute. 16 U.S.C. § 1540(f). Enforce means: "To put into execution; to cause to take effect; to make effective; as, to enforce a writ, a judgment, or the collection of a debt or fine; to compel obedience to." Black's Law Dictionary (1968); *Royal Palm Vill. Res., Inc. v. Slider*, 57 F.4th 960, 964 (11th Cir. 2023) (following Black's Law Dictionary definition of "enforce."). By including the "as may be appropriate" language, Congress conferred broad authority for the Secretary to determine what types of regulations would be appropriate to enforce the ESA. *Michigan v. EPA*, 576 U.S. 743, 751-52 (2015). *See also Mourning v. Family Pubs. Serv., Inc.*, 411 U.S. 356, 369 (1973) ("Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'") (quoting *Thorpe v. Housing Auth. of City of Durham*, 393 U.S. 268, 280-81 (1969)). The Speed Rule is an appropriate regulation to

enforce the ESA under section 1540(f), because the Rule protects against unlawful take prohibited by section 1538(a)(1)(B) and (C) and effectuates conservation consistent with section 1531(b) and (c)(1).

Plaintiffs incorrectly assert that the Secretary's discretion under the ESA is narrowly limited to the statutory prohibitions on take, such as killing an animal, and "downstream activities," "such as selling, transporting, or importing the animal." ECF No. 41 at 15, 10; ECF No. 60 at 7. The ESA itself does not limit the Secretary's rulemaking authority in this manner. To the contrary, the Speed Rule enforces—or effectuates—several ESA provisions. For example, the Speed Rule enforces 16 U.S.C. § 1538(a)(1)(B)-(C), which makes it unlawful for any person subject to the jurisdiction of the United States to "take" an endangered species within the United States or the territorial sea of the United States or to "take" such species upon the high seas. The Speed Rule is also consistent with 16 U.S.C. § 1531(b), which sets forth the purposes of the ESA:

> The purposes of this chapter are to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a) of this section.

*Id.* § 1531(b). The Speed Rule effectuates these provisions by minimizing the risk of illegal takings of right whales resulting from ship collisions and promoting conservation and recovery of the population. NMFS_004768. The Speed Rule is also consistent with the directive in 16 U.S.C. § 1531(c)(1), which declares the policy of

4

Congress "that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter." *Id. See also Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978) (discussing 16 U.S.C. § 1531(c)). To effectuate these provisions, NMFS lawfully exercised its authority to establish SMAs along the U.S. East Coast during times and in places where whales and vessels are likely to co-occur.

Plaintiffs' cited cases do not support their argument that the Speed Rule somehow deviates from the "particular way" that Congress chose to protect against take. ECF No. 60 at 8. In *Colorado River Indian Tribes v. National Indian Gaming Commission*, the "particular way" that Congress chose to regulate "class III" casino gambling was through a tribal-state compact, rather than via regulations promulgated by the National Indian Gaming Commission. 466 F.3d 134, 140 (D.C. Cir. 2006). By contrast, in enacting the ESA Congress delegated regulation of take exclusively to NMFS and the U.S. Fish and Wildlife Service, the two agencies charged with implementing the statute; the ESA does not reserve regulatory authority for some other entity.[2]

The Court should look to cases interpreting the Agency's authority under the ESA, as opposed to Plaintiffs' cited cases, which interpret other statutes. Contrary to

---

[2] The Speed Rule is also distinguishable from the regulation at issue in *FCC v. American Broadcasting Co.*, 347 U.S. 284, 296 (1954), in which the Court concluded that the agency's statutory authority to regulate broadcasting lotteries does not confer authority to regulate give-away programs, because give-away programs lack consideration and therefore could not be considered lotteries under the statute. Unlike the regulation at issue in *American Broadcasting Co.*, there is no tension between the Speed Rule and the ESA. The Speed Rule protects against the same activity (*i.e.,* the unauthorized taking of an endangered marine mammal) that Congress proscribed in the ESA (and the MMPA).

Plaintiffs' characterization, the Agency's authority to promulgate an ESA regulation to prevent the take of listed sea turtles was at issue in *Louisiana Shrimp Association v. Biden*, 789 F. Supp. 3d 467 (E.D. La. 2025), *appeal pending,* 24-cv-156 (5th Cir. July 31, 2025).[3] As part of their Commerce Clause claim, the plaintiffs questioned whether NMFS had statutory authority to regulate the incidental taking of sea turtles by requiring shrimp fishermen to utilize turtle excluder devices to reduce the likelihood of such takings. The Court concluded that "NMFS promulgated the Final Rule pursuant to explicit authority under the ESA." *Id.* at 490.[4] The Court also affirmed the Agency's statutory authority in relation to plaintiffs' argument regarding the Major Questions doctrine. *Id.* at 491 ("But regardless of the doctrine's application, here, Congress has clearly delegated NMFS the authority to administer the ESA—and the Final Rule is a result of precisely that.").

With respect to *United States v. Mitchell*, 39 F.3d 465, 471 (4th Cir. 1994), Plaintiffs concede that the regulation at issue there properly enforces the ESA because it helps the government investigate whether a statutory violation has already occurred. ECF No. 60 at 10. Plaintiffs' argument that the Secretary lacks authority to promulgate a regulation to prevent a statutory violation *before* it occurs is a distinction without a difference. The ESA does not expressly mandate the activity at issue in

---

[3] The agency's authority to promulgate "appropriate" regulations to "guard against incidental takings of a listed species" was also at issue in *Center for Biological Diversity v. National Marine Fisheries Service*, although appellants' counsel conceded the point during oral argument. No. 22-5295, 2024 WL 3083338, at *1 n.1 (D.C. Cir. June 21, 2024) (per curiam).

[4] Because some sea turtle species are ESA-listed as "threatened" and others are listed as "endangered," the *Louisiana Shrimp Association* court noted that the regulation at issue in that case was promulgated under *both* ESA sections 1533(d) and 1540(f). 789 F. Supp. 3d at 483.

*Mitchell* (completing paperwork), but the Court properly concluded that the regulation was "appropriate" to enforce the ESA. 39 F.3d at 471 (citing 16 U.S.C. § 1540(f)). So too here, the Court should conclude that the Speed Rule is appropriate to enforce the ESA's take prohibition.

Plaintiffs' discussion of the ESA penalty provision, *see* ECF No. 60 at 10-11 (discussing 16 U.S.C. § 1540(a)(1)), overlooks the relevant point that Congress afforded the Agency with a variety of tools to conserve listed species, including multiple tiers of civil and criminal penalties for statutory and regulatory violations, as well as the authority to enforce the ESA by adopting regulations that protect against take and conserve the species. 16 U.S.C. §§ 1540(f), 1531(b), (c)(1).

Interpreting ESA section 1540(f) to authorize the Speed Rule is consistent with the plain text of the statute and harmonizes the delegations in sections 1533(d) and 1540(f). Section 1533(d) applies to threatened species and grants two distinct types of authority. The first sentence creates a duty to develop regulations determined to be "necessary and advisable" for a threatened species' conservation. Given the broad definition of conservation in the ESA, 16 U.S.C. § 1532(3), this allows for tailored protections beyond the statutory prohibitions in section 1538(a), provided the Agency finds them "necessary and advisable."

The first sentence of section 1533(d) mandates regulations like the Speed Rule for threatened species if a "necessary and advisable" finding can be made. Plaintiffs themselves acknowledge that the first sentence of section 1533(d) authorizes "affirmative steps" to recover a species, and requiring speed limits in certain areas

7

qualifies as such an affirmative step. ECF No. 60 at 10. It would be illogical for Congress to grant such authority for threatened species and not for endangered species. Interpreting section 1540(f) of the ESA as authorizing the Speed Rule for endangered species, such as the North Atlantic right whale, logically harmonizes the rulemaking authority in sections 1540(f) and 1533(d) and is consistent with the text, structure, and purposes of the ESA.[5]

## II.    The Speed Rule Carries Out the MMPA.

In addition to ESA section 1540(f), MMPA section 1382(a) also provides NMFS authority to issue the Speed Rule. MMPA section 1382(a) provides that "[t]he Secretary, in consultation with any other Federal agency to the extent that such agency may be affected, shall prescribe such regulations as are necessary and appropriate to carry out the purposes of this subchapter." 16 U.S.C. § 1382(a). The Speed Rule carries out the purpose of MMPA section 1382(e), which authorizes the Secretary to "develop and implement conservation or management measures" to alleviate impacts on rookeries, mating grounds, or other areas of similar ecological significance when these impacts are impeding the recovery of a "strategic stock" such as the North Atlantic right whale. 16 U.S.C. § 1382(e). The Speed Rule is also consistent with the Congressional findings and declaration of policy regarding marine

---

[5] The Court need not determine to what extent 16 U.S.C. § 1533(d) authorizes rulemaking for requiring private individuals to undertake actions for the conservation of threatened species, because the right whale is an endangered species and the Speed Rule was promulgated under 16 U.S.C. § 1540(f). But for purposes of interpreting the meaning of 16 U.S.C. § 1540(f), the Court can and should consider that provision in the context of the entire statute. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965 (11th Cir. 2016) ("We must consider any specific terms and the particular provision at issue in light of the entire statutory context.").

mammals as set forth at MMPA section 1361, *id.* § 1361, as well as MMPA section 1371(a), which declares that there "shall be a moratorium on the taking" of marine mammals. *Id.* § 1371(a). As with the ESA, Congress conferred broad authority for the Secretary to determine what types of regulations would be necessary and appropriate to carry out the MMPA. *Michigan,* 576 U.S. at 752 (holding that similar language of the Clean Air Act is the "classic broad and all-encompassing term" and "leaves agencies with flexibility").[6]

Consistent with the purposes of 16 U.S.C. § 1382(e) to develop and implement conservation and management measures, the Speed Rule applies seasonally in discrete, ecologically significant areas where North Atlantic right whales occur. NOAA_001567; NOAA_001575. Because Federal Defendants invoked the regulatory authority conferred by 16 U.S.C. § 1382(a), it is of no moment that the Speed Rule does not cite MMPA section 1382(e) as providing regulatory authority. Pursuant to the Supreme Court's decision in *Loper Bright Enterprises,* the Court must independently interpret the MMPA and effectuate the will of Congress based on what the Court

---

[6] Plaintiffs are incorrect in asserting that MMPA section 1382(a) cannot support the Speed Rule because it is a "regulation[] with respect to the taking" of marine mammals that must, instead, be promulgated under MMPA section 1373. ECF No. 60 at 16. As explained in detail in our opening memorandum, *see* ECF No. 48 at 27-29, the text of sections 1371 and 1373 together make clear that the regulatory requirements in section 1373 apply only when the Agency is *authorizing* take under the MMPA. The Speed Rule establishes a speed limit in SMAs to reduce the likelihood that vessels will injure or kill right whales and thereby prevent take from occurring in the first place. It plainly does not authorize take. Thus, contrary to Plaintiffs' contention, section 1373 does not apply. Plaintiffs are also incorrect in suggesting that the Agency relied on MMPA section 103 (16 U.S.C. § 1373) when it promulgated a regulation on approaching and swimming with Hawaiian spinner dolphins. *See* ECF No. 60 at 16-17. The final rule for that regulation states "[w]e are finalizing this regulation pursuant to our rulemaking authority under MMPA sections 112(a) (16 U.S.C. § 1382(a)) and 102 (16 U.S.C. § 1372)." 86 Fed. Reg. 53818, 53837. (Sept. 28, 2021).

determines to be the "best reading" of the statute. 603 U.S. at 395 ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits."). Consistent with its role of independently interpreting the MMPA, the Court may conclude that the Speed Rule is consistent with the purposes of 16 U.S.C. 1382(e) irrespective of whether the agency itself cited that provision.

Even assuming *arguendo* that the agency's failure to explicitly cite MMPA section 1382(e) could be construed as a violation of the Administrative Procedure Act, 5 U.S.C. § 553(b)(2), such violation was harmless error, because the Agency satisfied the statutory criteria under both subsections (a) and (e). *See id.* § 706 (In reviewing agency action under the APA, "due account shall be taken of the rule of prejudicial error."). For example, to the extent a rulemaking pursuant to 16 U.S.C. § 1382(e) would have required consultation with other federal agencies such as the Marine Mammal Commission ("MMC"), NMFS utilized the public comment and Executive Order 12866 interagency process for the 2008 and 2013 Speed Rules. *See* NMFS_004776; NMFS_005041. The MMC submitted comments that NMFS considered in both rulemakings, satisfying its consultation obligations under the MMPA. NMFS_002883; NMFS_005016, Doc. NOAA-NMFS-2012-0058-0530. To the extent a rulemaking pursuant to 16 U.S.C. § 1382(e) would have required a determination regarding impacts on areas of ecological significance "based on a stock assessment . . . or other significant new information obtained under this chapter," the

10

Federal Register notice reviewed and approved for publication by the Acting Assistant Administrator incorporated such determination. *Id.* § 1382(e). *See* NMFS_003630 (Decision Memorandum); NMFS_004766 (Final Rule). The Court should uphold the Agency's exercise of its rulemaking authority pursuant to the MMPA.

### III.   Plaintiffs fail to show that the Speed Rule is an invalid categorical regulation.

"Categorical rules reflect broad generalizations holding true in so many cases that inquiry into whether they apply to the case at hand would be needless and wasteful." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002). Contrary to Plaintiffs' assertion that the Speed Rule is categorical in its application, *see id.,* it is subject to several exceptions and variable penalties and applies only in specific areas during certain times of year when North Atlantic right whales are likely to be present. 50 C.F.R. § 224.105. *See also* 16 U.S.C. §§ 1375(a)(1) (MMPA penalties); 1540(a)(1) (ESA penalties). And contrary to Plaintiffs' assertion that moving above ten knots in SMAs is "harmless[,]" ECF No. 60 at 19, the record before the Court demonstrates that the probability of a collision causing a whale's death increases rapidly and in a non-linear manner as vessel speed increases above nine knots. NMFS_004768.

This case illustrates perfectly why Congress conferred discretion on the Agency to implement regulations to prevent take under the MMPA and ESA, in addition to merely prohibiting such take. The decline of the right whale population "results from, inter alia, human-caused mortality from entanglements in fishing gear and vessel strikes in both U.S. and Canadian waters." *Mass. Lobstermen's Ass'n, Inc. v. Menashes*,

11

127 F.4th 398, 404 (1st Cir. 2025). "Because of the species' low reproduction level and small population size, even low levels of human-caused mortality can pose a significant obstacle for North Atlantic right whale recovery." NMFS_004765. Thus, reducing vessel speed in SMAs promotes the conservation of right whales by reducing the likelihood and severity of vessel strikes. Indeed, preventing the deaths of two adult females per year could be sufficient to reverse the slow decline detected in right whale population trends. *Id.*[7]

Where, as here, Congress has authorized an agency to adopt regulations "as may be necessary," the regulation will be sustained so long as it is reasonably related to the purposes of the enabling legislation, *Mourning*, 411 U.S. at 369, and is not otherwise foreclosed by statute, *Ragsdale*, 535 U.S. at 92. As explained in detail above, the Speed Rule is reasonably related to the purposes of both the ESA and the MMPA and is not foreclosed by either statute. The Supreme Court concluded that the regulation at issue in *Ragsdale* both contradicted and undermined the pre-existing remedial scheme of the Family Medical Leave Act. *Id.* ("[T]he Secretary's regulation instructs the courts to ignore this command."). *Id.* By contrast, here, the Speed Rule is consistent with and does not violate any "command" of the ESA or the MMPA. Plaintiffs' arguments that the Speed Rule improperly exposes vessel captains to

---

[7] Because Plaintiffs never contested the facts establishing liability, it is odd that Plaintiffs open their reply memorandum with the incorrect assertion that Defendants seek to hold Mr. Eubanks (Captain of the *M/V Determination III*) liable for violating the Speed Rule "even though he undisputedly did not take or even encounter a right whale." ECF No. 60 at 7. This supposedly undisputed statement is not in the parties' Stipulation of Agreed Material Facts, ECF No. 49. And it is unnecessary to determine whether Mr. Eubanks encountered a right whale for purposes of the pending cross-motions for summary judgment.

12

criminal liability is beyond the scope of the present challenge, which seeks review of a specific agency decision imposing a *civil* penalty. In sum, Plaintiffs fail to show that the Speed Rule is an improper categorical regulation.

## IV.    The Speed Rule does not implicate the major questions doctrine.

As demonstrated herein and in our opening brief, the Speed Rule falls squarely within the statutory delegation of the ESA and MMPA. Contrary to Plaintiffs' argument that the Speed Rule is an improper extension of these authorities, ECF No. 60 at 22, we showed that it is consistent with historical application of these authorities to protect not only right whales but also manatees and humpback whales. ECF No. 48 at 38 n.18. And contrary to Plaintiffs' assertion that the Speed Rule applies "coastwide[,]" ECF No. 60 at 23, the Speed Rule applies only in specific areas during certain times of year when North Atlantic right whales are likely to be present. NMFS_004779-80 (times and boundaries for seasonal management areas); NMFS_ 004781-83 (maps depicting seasonal management areas). It is unnecessary to follow Plaintiffs down a slippery slope and opine about the hypothetical limits of federal regulatory authority in matters not before this Court. Based on the stipulated facts and the arguments presented in this case, Plaintiffs fail to demonstrate that the Speed Rule is an agency decision of "vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022).

## V.    Neither the MMPA nor the ESA implicates the nondelegation doctrine.

Finally, we have demonstrated that Federal Defendants' interpretation of the MMPA and ESA as allowing it to issue the Speed Rule is consistent with Congress's

13

Article I powers. While delegating broad rulemaking authority to NMFS via ESA section 1540(f) and MMPA section 1382(a), Congress articulated numerous substantive and procedural requirements as well as statements of purpose for each statute—including ESA sections 1531(b), 1531(c)(1), and 1538(a)(1)(B)-(C) and MMPA sections 1361, 1371(a), 1382(a), 1382(e)—which together provide the requisite "guideposts" to inform the Agency's appropriate exercise of its rulemaking authority. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 681 (2025). Accordingly, Congress specified the requisite "intelligible principle" to which NMFS must conform. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (citation omitted). The ESA and MMPA do not run afoul of the non-delegation doctrine, which has been applied only twice previously in cases with very different circumstances to those here, and the Court therefore should grant summary judgment as to Plaintiffs' second claim for relief, ECF No. 1 ¶¶ 53-62.

## CONCLUSION

Defendants take issue with Plaintiffs' assertion that the purpose of the Agency's enforcement action is "punishing Mr. Eubanks." ECF No. 60 at 8, 26. To be sure, the violation of the Speed Rule resulted in the imposition of a monetary penalty; however, the fundamental purpose of the Speed Rule is to deter activities that are likely to result in the deaths of a critically endangered species. As stated in the ALJ's Initial Decision, "[i]t is apparent from this record that the need for deterrence exists, not only to prevent repeat behavior by Respondents, specifically, but also to deter others from violating the Speed Rule, generally." NOAA_001990. Accordingly, "[t]he goal of the

14

Speed Rule is to spur vessel operators as a whole to act in a way that reduces the risk that a North Atlantic right whale will be severely injured or killed in a proactive effort to reduce the cumulative risk posed by those vessels." NOAA_001987. The Court should uphold the agency's lawful exercise of its rulemaking authority pursuant to the ESA and MMPA in its review of this administrative enforcement action. Accordingly, Federal Defendants respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment in accordance with 5 U.S.C. § 706(2), requiring Plaintiffs to pay the $14,250 penalty assessed against them.

Date:  March 3, 2026                    Respectfully submitted,


                                        ADAM R.F. GUSTAFSON
                                        Principal Deputy Assistant Attorney General
                                        Environment & Natural Resources Division

                           By:    /s/ *Mark Arthur Brown*
                                        MARK ARTHUR BROWN
                                        (FL Bar 0999504)
                                        Senior Trial Attorney
                                        Wildlife and Marine Resources Section
                                        United States Department of Justice
                                        P.O. Box 7611
                                        Washington, D.C. 20044-7611
                                        TEL: (202) 532-3103
                                        E-mail: mark.brown@usdoj.gov


                                        15

Of Counsel:

Deborah Ben-David
Joseph Heckwolf
NOAA/GCF
1315 East-West Highway
Room 15602
Silver Spring, MD 20910